METHA OSWALD, Appellee, vs. RICHARD R. NEHLS et al. Appellants.

*Opinion filed April 23, 1908.*

1. CONTRACTS—*contract to devise property by will is enforcible.* A party may make a binding contract to dispose of his property by will in a specified manner, and if the contract is based upon sufficient consideration and is clearly established it may be enforced in equity.

2. EVIDENCE—*when complainant is competent witness.* Where a bill is filed against the children of a deceased land owner for the specific performance of a contract by him to devise all of his property to the complainant by will, the complainant may testify in her own behalf as to performance of the contract in so far as it affects land which the children hold as voluntary grantees, even though, as to the land they hold as heirs, she is not competent to testify.

3. SAME—*when decree will not be reversed for incompetent testimony.* Upon appeal in a chancery case all the evidence is open to review in the Supreme Court, which will presume that the chancellor did not consider incompetent testimony; and the fact that there is incompetent testimony in the record does not require reversal, where it appears that all relief was denied except that which could be granted under the competent testimony.

4. SAME—*when fact that administrator is a party does not preclude complainant testifying.* The fact that the administrator of a deceased land owner's estate is made a co-defendant, with the children of the deceased, to a bill for specific performance does not render erroneous the admission of complainant's testimony in her own behalf as to performance of the contract, where there was no decree against the administrator and the relief decreed was limited to the land held by the children as grantees and not as heirs.

5. SAME—*self-serving statements are inadmissible.* Self-serving statements made by a party to a transaction are not admissible in evidence in his own behalf, nor can they be admitted when offered by his voluntary grantees.

6. DEEDS—*voluntary conveyance is avoidable where contractual rights are affected.* A voluntary conveyance is avoidable at the instance of any one whose contractual rights against the grantor are prejudiced thereby; and proof that the grantor loved and esteemed the grantees is not admissible as supplying a consideration which would afford the grantees protection as innocent purchasers without notice of the contractual rights infringed upon.

7. SPECIFIC PERFORMANCE—*when contract for personal care is enforcible.* Contracts for personal care and services are not usually capable of specific enforcement while they remain executory, but where the provisions for care or for services have been fully' performed the remaining provisions may be specifically enforced, if the circumstances are such that to deny specific performance would leave the complainant with an injury which could not be adequately compensated in damages. .

8. SAME—*when a contract does not require illegal practice of medicine.* A contract by which a person having no license to practice medicine agrees with another "to personally care for and nurse him" during his life, does not require such person, in the performance of her duties, to practice medicine without a license, in violation of the statute.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This is a bill for the specific performance of a contract, filed in the superior court of Cook county by Metha Oswald against certain persons who had succeeded to the possession and claimed some interest in the proceeds of certain real estate which had formerly belonged to Ludwig J. Nehls. Upon a hearing in open court a decree was rendered granting the prayer of the bill in so far as it applied to the proceeds of the real estate which had formerly belonged to Ludwig J. Nehls, but the court did not grant any relief respecting any other property belonging to the Nehls estate. Upon appeal to the Appellate Court for the First District the decree was affirmed. By a further appeal the cause is brought to this court for review.

This litigation grows out of the following facts: In the month of August, 1897, Ludwig J. Nehls, being at that time about sixty-five years of age, resided alone in his home at No. 462 South Sangamon street, Chicago. He had a wife, Emily Nehls, but for some reason not disclosed by the record she did not reside with her husband. He also

had children, but they were grown up and had homes of their own. The evidence fairly tends to establish that in addition to the general debility usually attending upon old age, Ludwig J. Nehls was suffering from a disease of the urino-genital organs and chronic Bright's disease. His condition appears to have been such that he required the aid of some one to nurse and care for him. Appellee is a professional nurse and had practiced her profession in Chicago for fifteen years. She had been married twenty-five years, and her husband and two grown daughters constituted her family. She maintained offices and followed her profession as a means of aiding in the support of the family. Ludwig J. Nehls became acquainted with appellee in 1897, and after some negotiations a verbal arrangement was entered into by which appellee agreed to render Ludwig J. Nehls such professional attention as his physical needs required, and in consideration of such services Nehls agreed to pay appellee a reasonable compensation. It is shown that appellee continued to give Nehls her professional attention and care, relying on his promises to compensate her, until April, 1901. During this time appellee had frequently demanded pay for her services. Nehls, however, did not pay her but always promised to do so. Appellee testifies that she received no compensation whatever from Nehls except the sum of $10, which was paid to her soon after she was employed. In April, 1901, appellee being dissatisfied with the contract under which she was working, a verbal arrangement or contract was entered into by which appellee agreed to care for and nurse Nehls during the remainder of his life, and in consideration of this undertaking upon her part Ludwig J. Nehls promised appellee to devise and bequeath to her all of his estate, both real and personal, which he might own at the time of his death, and promised not to dispose of, sell or encumber his estate in any manner. Under this contract appellee continued in the service of Nehls until the 26th day of November, 1902, when the following

written contract was entered into between appellee and Ludwig J. Nehls:

"This agreement, made and entered into this 26th day of November, A. D. 1902, and executed in duplicate, by and between Mrs. Metha Oswald of the first part and Ludwig J. Nehls of the second part, both of the city of Chicago, Cook county, Illinois, witnesseth:

"Whereas, the said Metha Oswald, in consideration of one dollar and the performance by the said Ludwig J. Nehls of the agreements hereinafter mentioned, hereby agrees and binds herself to personally care for and nurse the said Ludwig J. Nehls for and during the term of his natural life, and further agrees to waive, and does hereby waive, any and all rights she may have under the law to demand payment for her services in case she shall at any time, during the lifetime of the said Ludwig J. Nehls, refuse and cease to care for him. And the said Ludwig J. Nehls hereby agrees, in consideration of the faithful performance of the duties to be performed, as hereinbefore agreed, by the said Metha Oswald, to will, devise and bequeath unto the said Metha Oswald all his estate, real, personal and mixed, which he may be possessed of or entitled to at the time of his decease. It is further agreed that the said Ludwig J. Nehls shall not sell or dispose of or mortgage his real estate during his natural life unless said parties hereto agree thereto or unless said parties cease to live in the relation of employer and employee, as hereinbefore mentioned.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year above written.

METHA OSWALD,     (Seal.)<br>LUDWIG J. NEHLS.     (Seal.)

Signed in the presence of Malcolm Lamont."

After the execution of the foregoing contract appellee continued in the employment of Nehls, rendering him all the aid and assistance in her power, until the 13th day of May, 1905. At this time Nehls' condition had become such that it was apparent that he could live but a short time. It appears that about the 13th of May, or soon thereafter, some of Nehls' children, without the knowledge of the appellee, caused him to be removed to a hospital. Appellee did not know where Nehls was after this date. She made frequent calls at his home to see him but gained no information as to his whereabouts. She continued her visits and inquiries concerning the whereabouts of Nehls, and finally, on the

19th of August, she learned that Ludwig J. Nehls had died on August 7 at Elgin, Illinois.

Ludwig J. Nehls left no last will and testament. On July 27, 1905, he made a conveyance of all of his real estate, in consideration of one dollar and natural love and affection, to Charles F. Nehls, Richard R. Nehls and Emily Zillgitt, children of the grantor. Charles F. Nehls immediately made a voluntary conveyance of his interest in the property to his mother, Emily Nehls. It is not pretended that either of these conveyances was based upon a valuable consideration. A condemnation proceeding was instituted and the real estate in question was condemned for school purposes. This proceeding was instituted on the 31st day of July, 1905, and resulted in a condemnation of the entire lot for school purposes, the damages being assessed at $4600. This money, by order of the court, was paid to John J. Hanberg, as county treasurer, to be paid by him to the persons found to be entitled thereto as a result of this litigation. By the decree of the superior court of Cook county the grantees in the Nehls deed of July 27, together with Emily Nehls, grantee of Charles F. Nehls, were ordered to make a conveyance of the real estate in question to appellee, and thereupon the county treasurer of Cook county was ordered and directed to pay to appellee the $4600 held by him. James Reddick, as administrator of Ludwig J. Nehls' estate, was made a party defendant, but no decree was passed against him and he has not joined in the appeal. The decree appealed from does not affect the estate in any way except as to the real estate conveyed by Nehls to his children.

RUDOLPH D. HUSZAGH, and SAMUEL A. ETTELSON, for appellants.

LIMBACH & LEDBETTER, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The rule is well established in this State that it is competent for a person owning property to make a contract to dispose of it by will in a particular way, and that such a contract, when based upon a sufficient consideration and clearly established, will be enforced in equity. (*Weingaertner* v. *Pabst,* 115 Ill. 412; *Dicken* v. *McKinley,* 163 id. 318; *Whiton* v. *Whiton,* 179 id. 32; *Barrett* v. *Geisinger,* 179 id. 240; *Hudnall* v. *Ham,* 183 id. 486.) The same rule appears to be recognized in most other jurisdictions. (See *Krell* v. *Codman,* 154 Mass. 454; 14 L. R. A. 860.) Without questioning this general rule, appellants contend that appellee is not entitled to relief under the facts properly in this record.

*First*—Appellants contend that this action is, in effect, an attack upon the Nehls estate, and that therefore appellee was an incompetent witness in her own behalf under section 2 of chapter 51 of Hurd's Revised Statutes of 1905. If appellants' contention in this regard is sustained the decree below will have to be reversed, since the proof of compliance with the contract by appellee depends almost entirely upon her own testimony. Under the statute appellee could not become a witness in her own behalf if the adverse parties were defending as the heirs or personal representatives of the deceased. But the record shows that the only persons who are defending here are the direct and remote grantees of the deceased. Reddick was made a party as administrator, but he interposed no defense. No decree was rendered against him and he has not joined in this appeal. The decree only provides for the payment to appellee of the money in the hands of the county treasurer, which represents the lot conveyed to appellants. Appellants base their claim to this fund upon the conveyance made by their father to them, and as to this property they are not defending as heirs, legatees or devisees of Ludwig J. Nehls, but only as im-

mediate and remote grantees of the deceased. The case, therefore, does not fall within section 2 of chapter 51 of the Revised Statutes. Appellee is a competent witness in the case, and her evidence showing a compliance on her part with the contract was properly considered. (*Goelz* v. *Goelz,* 157 Ill. 33.) The facts that the administrator was a party to the record and the scope of the bill was broader than the decree, in that it sought to reach other property in the hands of appellants, as heirs of the deceased, would not render appellee an incompetent witness or make it necessary to reverse the decree because a portion of her testimony may have been incompetent. In an appeal to this court in chancery cases, the whole record, including all the evidence offered, is before us, and we are required to assume that all the incompetent evidence was rejected and all the competent evidence was admitted and considered by the trial court. If there is, upon the whole record, competent evidence sufficient to sustain the decree it must be affirmed; if not, it must be reversed; and this without regard to whether the court may have been right or wrong in his views as to the competency of the evidence at the hearing. (*Tunison* v. *Chamblin,* 88 Ill. 378; *Stone* v. *Wood,* 85 id. 603; *Moore* v. *Tierney,* 100 id. 207; *Smith* v. *Long,* 106 id. 485; *Treleaven* v. *Dickson,* 119 id. 548; *Goelz* v. *Goelz, supra.*) The scope of the decree rendered in this case shows that the chancellor applied the law with careful discrimination and denied appellee all relief except such as could be afforded without considering incompetent evidence.

*Second*—It is next contended by appellants that the court should have received and considered evidence offered by appellants as to certain statements made by the deceased to third parties as to the payment of money by deceased to appellee. Statements made by a party to a transaction to third persons in his own interest are self-serving and inadmissible. If such statements would be inadmissible if offered by the party making them in his own behalf, they

would be equally so when offered by his voluntary grantees. This evidence was properly rejected. *Oliphant* v. *Liversidge,* 142 Ill. 160.

It is also contended by appellants that the court should have received evidence of statements made by Nehls tending to show his love and esteem for his children. It appears to be the theory of appellants that by proving that their father had a paternal love and affection for his children this would furnish a consideration for the deed, which, in connection with a want of notice to the grantees of the contract between appellee and their father, would entitle appellants to claim the protection accorded by the law to innocent purchasers. This is a misapprehension of the law. The deed from Ludwig J. Nehls to his children being a voluntary conveyance, is voidable at the instance of anyone whose contractual rights against the grantor are prejudiced thereby. All conveyances not supported by what the law deems a valuable consideration are voluntary, and subject to be set aside by creditors or other persons who, by virtue of contracts resting upon a valuable consideration, have acquired legal or equitable rights in the property. If natural love and affection on the part of their father could avail appellants anything, the law would presume its existence from the relation of parent and children without proof. There was no error in rejecting this evidence.

*Third*—It is next insisted by appellants that the contract in question is wanting in mutuality and for that reason a specific performance should be denied. This contention can not be sustained. The general rule is, that before specific performance of a contract will be decreed it must appear that there was mutuality, both in the obligation and remedy, under the contract, as long as the contract remains executory on both sides. (Waterman on Specific Perf. sec. 196; Page on Contracts, sec. 1621; *Lancaster* v. *Roberts,* 144 Ill. 213; *Welty* v. *Jacobs,* 171 id. 624; *Bauer* v. *Lumaghi Coal Co.* 209 id. 316.) But this rule has no application to con-

tracts in which the provisions which could not be enforced specifically have been fully performed. Contracts for personal care and attention or personal services cannot usually be enforced specifically. However, when personal care and attention or personal services have been fully performed, and the circumstances are such that to deny specific performance would leave the party with an injury that could not be adequately compensated in damages, equity will grant a specific performance of the remaining provisions of the contract. Page on Contracts, sec. 1623, and cases therein cited.

*Fourth*—It is finally contended by appellants that the evidence shows that the real consideration for this contract was illicit and immoral relations between appellee and Ludwig J. Nehls. This contention raises a question of fact. We have carefully considered all the evidence, together with appellants' arguments based upon it, and have reached the conclusion that there is no substantial basis for this charge. The evidence from which this conclusion is sought to be drawn is either so unreasonable as to be unworthy of belief, or relates to circumstances of such little probative force that we do not feel called upon to reverse the finding of the chancellor upon this question.

Another point pressed upon our attention as a reason for reversing this decree is that the contract is unenforcible because its performance required appellee to practice medicine without being legally licensed so to do. The duties assumed by appellee under the contract were "to personally care for and nurse the said Ludwig J. Nehls for and during the term of his natural life." The agreement "to nurse" an adult person necessarily conveys the idea that the object of the care is sick or is an invalid. It means more than mere watchfulness. It means such care of the person and attention to the surroundings as will conduce to the comfort and hasten the recovery of the patient. The practice of medicine, within the meaning of our statute regulating the practice of medicine, and as generally understood, neces-

sarily requires a knowledge of all those things a professional nurse is supposed to know. It embraces much more. It includes the application of knowledge of medicine, of disease and the loss of health. (*People* v. *Blue Mountain Joe,* 129 Ill. 370.) Neither the terms of the contract nor the acts done in performance thereof by appellee are illegal under our statute relating to the practice of medicine.

There being no error in this record the judgment of the Appellate Court for the First District is affirmed.

*Decree affirmed.*